Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
Joseph E. Rosenbaum (SBN 347576)
  jrosenbaum@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff EFL Global LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFL GLOBAL LLC., a New York Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> UBER FREIGHT LLC., a Delaware Limited Liability Company. <br><br> Defendant. | Case No.  3:25-cv-07214 <br><br> **COMPLAINT** <br><br> Action Filed: |

Plaintiff, EFL GLOBAL LLC hereby alleges against the Defendant UBER FREIGHT LLC as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract, negligence, gross negligence, declaratory relief, and breach of the covenant of good faith and fair dealing. Despite Plaintiff EFL Global LLC's reliance on Uber Freight LLC's performance of its duties to EFL Global LLC, Uber Freight LLC failed to perform its duties in accordance with the parties' written agreement and pursuant to its standard of care, causing over $715,978.04 in damage to EFL Global LLC.

## PARTIES

2. At all times relevant herein, Plaintiff EFL Global LLC ("Plaintiff" or "EFL California") was and still is a limited liability company duly organized and existing by virtue of the

laws of the State of New York with its principal place of business located at 1500 NW 97th Avenue, Miami, Florida 33172. EFL California is engaged in the business of providing freight forwarding, cargo logistics, and shipping services.

3. EFL California's member is a privately held company formed outside of the United States.

4. At all times relevant herein, Defendant Uber Freight LLC ("Defendant" or "Uber Freight") was and still is a corporation duly organized and existing by virtue of the laws of the State of Delaware with its principal place of business at 1725 3rd Street, San Francisco, CA 94158.

5. Uber Freight is engaged in the business of providing logistics coordination, freight brokerage, and transportation management services in California and throughout much of the United States.

6. At all times relevant herein, Defendant has been and is authorized to do business in the State of California as evidenced by its filings on the website of the California Secretary of State.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and Defendant in this action.

8. The amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000.

9. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in San Francisco, California, and, at all times relevant hereto, Defendant has transacted and transacts business in California, regularly did and does transact business in California, and has derived and does derive substantial revenue from goods used or consumed, or services rendered, in California.

10. Venue in this District is proper because Defendant resides in this District.

**FACTS**

11. In or around 2025, non-parties lululemon USA Inc. and Urban Outfitters Inc. contracted with Plaintiff EFL California to transport containers of goods from Asia to Groveport,

2

Ohio and from Asia to two different addresses in Reno, Nevada respectively. The goods arrived in Los Angeles in 2025. The goods in the containers were newly manufactured and arrived in Los Angeles unharmed and in good condition.

12. EFL California and Defendant entered into a written click the box agreement, the Uber Freight Shipper Platform Terms and Conditions of Service (the "Agreement"), the terms of which provided in part that Uber Freight would provide freight brokerage services to EFL California. A true and correct copy of the Agreement is attached as **Exhibit A**.

13. The Agreement states that Defendant would provide property brokerage services as a federally licensed freight broker and other services, products, and software related to logistics or freight transportation. It represents that Defendant arranges for transportation by third-party motor carriers. *See* Agreement Introduction.

14. The Agreement also states that Defendant will establish a corporate account for EFL California to access an online platform regarding Defendant's services. The platform allows EFL California to, among other things: (1) build shipments and receive price quotes; (2) tender shipments to Defendant, another broker, or a motor carrier; (3) view shipment and transportation details; and (4) prepare and review activity reports. *See* Agreement, §§ 1.1 and 2.1.

15. The Agreement also contains the following unconscionable provisions (the "Unconscionable Provisions") that Plaintiff is informed and believes, and based thereon alleges, are contrary to Civil Code Section 1670.5 and which unlawfully: (1) shift or purportedly attempt to shift all liability to motor carriers for property or cargo, including any loss, theft or damage thereto in violation of California public policy–notwithstanding Defendant's failure in the first instance to properly safeguard and/or take reasonable steps to safeguard its internal computer systems, enabled its employees, agents or third parties to access same for improper purposes, let alone to fraudulently impersonate motor carriers or otherwise intercept property or merchandise being shipped–resulting in the loss, theft, or damage thereof; while at the same time (2) limiting or purportedly attempting to limit the liability of even the underlying motor carriers to no more than $100 per shipment regardless of the value of the property or merchandise being shipped; and in any event then (3) capping or purporting to cap whatever liability Defendant may have for direct damages to Plaintiff

1  and others which it is unable to so shift to motor carriers–to no more than $20,000; while at the same
2  time (4) providing or attempting to provide that Delaware law will govern disputes between the
3  parties to avoid the unconscionability provisions set forth in the California Civil Code and the public
4  policy of this State and even though Defendant not only resides in San Francisco, California; but in
5  addition, all relevant events of this lawsuit occurred substantially in this State:

> **Section 6 – Broker Role & Cargo Liability**
> "UBER FREIGHT IS NOT A MOTOR CARRIER… The motor carrier shall be solely responsible for … (iv) any cargo loss or damage in accordance with applicable United States federal law up to $100,000 per shipment … Uber Freight does not assume any liability or financial responsibility for property or cargo, including any loss, theft, damage or delayed delivery thereof."
>
> **Section 8.1 – Limitations of Liability**
> "IN NO EVENT SHALL UBER FREIGHT OR CUSTOMER BE LIABLE FOR ANY INDIRECT, PUNITIVE, INCIDENTAL, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES… IN NO EVENT SHALL EITHER PARTY BE LIABLE UNDER THIS AGREEMENT FOR ANY DIRECT DAMAGES IN AN AMOUNT EXCEEDING TWENTY THOUSAND DOLLARS. The limitations… will not apply to Fees owed by Customer, Sections 4.2, 7.2 and 10.9, or to fraud or willful criminal acts."
>
> **10.1 – Governing Law.**
> Except to the extent governed by applicable United States federal law, this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its choice or conflict of laws provisions.

16.    Section 1670.5 of the California Civil Code provides courts with authority to disregard or limit unconscionable contract terms. Plaintiff is informed and believes, and based thereon, alleges that it reflects the public policy of California. Subpart (a) thereof states in pertinent part: "If the Court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may…enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

17.    Uber Freight's motto is "do the right thing." Plaintiff is informed and believes, and based thereon alleges, that "doing the right thing" does not include, inter alia, inserting the unconscionable terms set forth above into a click the button contract to enable Defendant to avoid

4

or otherwise shift all liability for its own misconduct to others and at the same time try to impose Delaware law in order to avoid the public policy of California.

18. Uber Freight represented to EFL California that its standard practices with respect to commercial relationships as existed here, were as follows:

- Shipments built through Defendant's system with all required information are tendered via the Shipper Platform at the agreed upon rate. Loads may also be tendered via email with the required information and built manually.
- Loads are then made available to Uber Freight's carrier network once details (appointment times, addresses, etc.) are confirmed. All loads for EFL California have had carrier booking rules in place since August of 2023, preventing carriers with less than 10 loads completed or less than six months of carrier authority from viewing or booking the shipments.
- Carriers may book shipments via the carrier web portal, through the Uber Freight app, or by calling/emailing carrier representatives. Carriers then assign a dispatcher/driver to the load.
- Most loads are tracked via App GPS, or ELD. Shipments that do not show automatic tracking typically result in outreach via email or phone to the dispatcher/driver to confirm the load status and ETA to shipper.
- Once the driver arrives at the shipper, it is the customer/shipper's responsibility to confirm that the carrier who arrives matches the carrier assigned to the load.

19. Uber Freight had a duty to, among other things:
- ensure that its online vendor system was secure;
- vet the vendors, carriers, and third parties who had access to its system;
- vet its employees to ensure they did not engage in illegal activity;
- put safeguards in place to prevent or reasonably prevent fraud, impersonation, and theft by its employees, agents and other carriers from accessing or using its internal computer systems for improper purposes, or bad actors; and

5

- ensure or take reasonable steps to ensure that any goods and containers were safely shipped.

20. Uber Freight also had a duty to contact the carrier to confirm the load status.

## THE LULULEMON CONTAINER

21. On or about February 13, 2025, EFL California contracted with Uber Freight to provide truck brokerage services to transport a container of lululemon apparel containing 833 cartons, referencing container number ZCSU6675568 from Los Angeles to Groveport, Ohio.

22. Said shipment was at Container Freight Services USA, Inc.

23. Uber Freight dispatched the load to Fire Sky Transport Inc. to recover on February 13, 2025.

24. On or about February 14, 2025, Uber Freight entered a load into the Uber Freight system to pick up a trailer of lululemon apparel containing 833 cartons. Uber Freight's Load/BOL reference number is Uber Freight-2205122835.

25. On or about February 14, 2025, said load was picked up by Uber Freight and scheduled for delivery on or about February 19, 2025 at 8:00am.

26. On or about February 17, 2025, Uber Freight allowed an imposter to pick up the load and released the load to the imposter.

27. On or about February 17, 2025, Uber Freight notified EFL California that their assigned carrier was impersonated and that container number ZCSU6675568 had been stolen.

28. The total value of container number ZCSU6675568 based on the FOB price is $338,890.81.

29. On or about February 17, 2025, EFL California filed a Preliminary Claim/Notice of Intent to File Claim with Uber Freight for container number ZCSU6675568.

30. On or about February 19, 2025, a police report was filed with the Sheriff of Los Angeles County.

31. On or about February 20, 2025, lululemon filed a formal claim with EFL California for $338,890.81 resulting from the theft of container number ZCSU6675568.

32. Thereafter, EFL California filed a formal claim against Uber Freight for container number ZCSU6675568.

33. On or about February 20, 2025, Uber Freight acknowledged EFL California's formal claim for container number ZCSU6675568.

34. Uber Freight failed to follow up with Fire Sky Transport to ensure or take reasonable steps to ensure that Fire Sky was the entity who accepted the load pickup request.

35. Uber Freight failed to verify or take reasonable steps to verify that the trucker who arrived was the proper trucker to pick up the load.

36. Uber Freight failed to safeguard or take reasonable steps to safeguard its internal computer systems to prevent or take reasonable steps to prevent fraud, theft, and third parties from accessing same for improper purposes and then impersonating carriers.

37. Upon information and belief, one or more of Uber Freight's employees or agents were also involved in the theft of the lululemon goods.

38. Upon information and belief, Uber Freight's online system was subject to a data breach which allowed third party bad actors to access the system, resulting in the theft of the lululemon goods.

## THE URBAN OUTFITTERS CONTAINER

39. Not having learned its lesson, Uber Freight again breached its agreement with and duties to EFL California by allowing another container to be brazenly and easily stolen.

40. In or about March 2025, EFL California contracted with Uber Freight to provide truck brokerage services to transport a container of Urban Outfitter apparel containing 886 cartons, referencing trailer number 616005 and seal number 64190906 from the Port of Los Angeles to Reno, Nevada.

41. Said shipment was at Farjado Trucking, Inc.

42. Uber Freight dispatched the load to L&M Transport to recover on April 1, 2025.

43. On or about April 1, 2025, Uber Freight allowed two different drivers who were impersonating carriers to pick up the two Urban Outfitter loads and released the two loads to the impersonators.

7

44. The total value of trailer number 616005 based on the FOB price is $377,087.23.

45. On or about April 1, 2025, Urban Outfitters filed a formal claim with EFL California for $377,087.23 resulting from the theft of trailer number 616005.

46. Thereafter, EFL California filed a formal claim against Uber Freight for trailer number 616005.

47. On or about April 30, 2025, Uber Freight acknowledged EFL California's formal claim for trailer number 616005.

48. Uber Freight failed to follow up with L&M Transport to ensure or take reasonable steps to ensure that L&M Transport was the entity who accepted the load pickup request.

49. Uber Freight failed to verify or take reasonable steps to verify that the trucker who arrived was the proper trucker to pick up the load.

50. Uber Freight failed to safeguard or take reasonable steps to safeguard its internal computer systems to prevent fraud, theft, and third parties from accessing same for improper purposes and then impersonating carriers.

51. Upon information and belief, one or more of Uber Freight's employees or agents were also involved in the theft of the Urban Outfitter's goods.

52. Upon information and belief, Uber Freight's online system was subject to a data breach which allowed third party bad actors to access the system, resulting in the theft of the Urban Outfitter's goods.

53. Uber Freight failed to safeguard or take reasonable steps to safeguard its internal computer systems even after the Urban Outfitter goods were stolen due to Uber Freight's breach of agreement and gross negligence.

54. On or about July 1, 2025, EFL California's counsel sent a litigation hold letter to Uber Freight.

55. Uber Freight did not respond to EFL California's litigation hold letter.

56. EFL California contacted Defendant numerous times demanding payment of its claims.

8

57. EFL California has spent several months attempting to resolve this dispute with Uber Freight, without success.

## AS AND FOR A FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

58. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 above as though the same were more fully set forth herein.

59. EFL California and Defendant entered into a valid and enforceable written agreement whereby Defendant Uber Freight agreed to (1) provide property brokerage services as a federally licensed freight broker and other services, products, and software related to logistics or freight transportation, including arranging transportation by third-party motor carriers (Agreement Introduction), and (2) establish a corporate account for EFL California to access its online platform to (a) build shipments and receive price quotes, (b) tender shipments to Defendant, another broker, or a motor carrier, (c) view shipment and transportation details, and (d) prepare and review activity reports (Agreement §§ 1.1, 2.1). This agreement required Defendant Uber Freight to ensure or take reasonable steps to ensure that logistical requirements and specifications, including but not limited to ensuring or taking reasonable steps to ensure that the appropriate, authorized, legitimate carrier picked up the goods for transportation and that the Uber Freight online carrier system was protected from fraud, theft, and access for improper purposes, including but limited to the impersonation of legitimate and valid carriers.

60. Defendant Uber Freight materially breached its contractual obligations by failing to properly coordinate and arrange for the safe transportation of the lululemon and Urban Outfitters goods to their respective destinations as part of its duties to provide freight brokerage and other services.

61. Defendant Uber Freight materially breached its contractual obligations to provide an appropriate online corporate account to EFL California by, inter alia, failing to ensure or take reasonable steps to ensure that its online vendor system was secure, failing to vet the vendors, carriers and third parties who had access to its system, failing to vet its employees and agents to ensure they did not engage in improper access or illegal activities, putting safeguards or taking

9

reasonable steps in place to prevent improper access, let alone to prevent fraud, impersonation, and theft by its employees, agents, other carriers using the systems, or bad actors.

62. Defendant Uber Freight did not honor the Agreement or follow the representations made to EFL California about its procedures. If Uber Freight had done so, EFL California would not have been damaged.

63. EFL California performed under its agreement with Uber Freight and/or its performance was excused by Uber Freight's material breach thereof.

64. As a direct and proximate result of Defendant Uber Freight's breaches of agreement, Plaintiff has sustained significant monetary damages, including the loss of the lululemon and Urban Outfitters goods and consequential damages as follows;

- $338,890.81 for the lost lululemon goods; and
- $377,087.23 for the lost Urban Outfitter goods.

65. The amount of goods lost totaled $715,978.04.

66. Plaintiff has suffered and continues to suffer damages in an amount to be determined according to proof at trial but estimated to be no less than $715,978.04 plus prejudgment interest accrued and accruing.

**AS AND FOR A SECOND CAUSE OF ACTION**

**(NEGLIGENCE)**

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 66 above as though the same were more fully set forth herein.

68. Defendant Uber Freight owed EFL California a duty to exercise reasonable care in arranging for the transport of lululemon's cargo from Los Angeles to Groveport, Ohio, in or around February 2025.

69. Defendant Uber Freight owed EFL California a duty to exercise reasonable care in arranging for the transport of Urban Outfitter's cargo from Los Angeles to Reno, Nevada, in or around March 2025.

/ / /

/ / /

70. Defendant Uber Freight's duty of care includes, but is not limited to ensuring or taking reasonable steps to ensure that the goods shipped remained safe and not subject to loss or damage.

71. Plaintiff is informed and believes, and thereupon alleges, that Defendant Uber Freight breached its duty of care by negligently failing to confirm that the persons to whom they transferred the goods to were indeed the proper individuals to whom the goods should be released.

72. Uber Freight failed to follow up with either Fire Sky Transport or L&M Transport to ensure or take reasonable steps to ensure they were each the entity who accepted the load pickup request.

73. Uber Freight failed to verify or take reasonable steps to verify that the trucker who arrived was the proper trucker to pick up the load.

74. Uber Freight failed to safeguard or take reasonable steps to safeguard its internal computer systems to prevent fraud, theft, and third parties from accessing same for improper purposes and then impersonating carriers.

75. Upon information and belief, one or more of Uber Freight's employees and agents were involved in the theft of the lululemon goods. Uber Freight failed to have measures or take reasonable steps to have measures in place to prevent an "inside job" from occurring.

76. Upon information and belief, Uber Freight's online system was subject to a data breach which allowed third party bad actors to access the system, resulting in the theft of the lululemon and Urban Outfitter goods.

77. Uber Freight failed to safeguard or take reasonable steps to safeguard its internal computer systems even after the lululemon and/or the Urban Outfitter goods were stolen.

78. As a direct and proximate result of Defendant Uber Freight's grossly negligent acts and omissions, Plaintiff sustained substantial damages, including but not limited to the total loss of the goods as follows:

- $338,890.81 for lost lululemon goods; and
- $377,087.23 for lost Urban Outfitter goods.

79. Defendant Uber Freight's conduct proximately caused the goods to be lost.

11

80. The amount of goods lost totaled $715,978.04.

81. Plaintiff's damages are a certain, foreseeable, and measurable consequence of Defendants' foregoing breaches and violations. Plaintiff was harmed by Defendants' aforementioned conduct, which was a substantial factor in causing Plaintiff harm. Plaintiff has suffered damages in a certain sum to be determined according to proof at trial, but which it estimates equals at least $715,978.04, plus prejudgment interest accrued and growing.

## AS AND FOR A THIRD CAUSE OF ACTION
## (GROSS NEGLIGENCE)

82. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 81 above as though the same were more fully set forth herein.

83. Defendant Uber Freight owed EFL California a duty to exercise reasonable care in arranging for the transport of lululemon's cargo from Los Angeles to Groveport, Ohio, in or around February 2025.

84. Defendant Uber Freight owed EFL California a duty to exercise reasonable care in arranging for the transport of Urban Outfitter's cargo from Los Angeles to Reno, Nevada, in or around March 2025.

85. Defendant Uber Freight's duty of care includes but is not limited to ensuring that the goods shipped remained safe and not subject to loss or damage.

86. Plaintiff is informed and believes, and thereupon alleges, that Defendant Uber Freight breached its duty of care by its grossly negligent failure to confirm that the persons to whom they transferred the goods to were indeed the proper individuals to whom the goods should be released.

87. Uber Freight failed to follow up with either Fire Sky Transport or L&M Transport to ensure or take reasonable steps to ensure they were each the entity who accepted the load pickup request.

88. Uber Freight failed to verify or take reasonable steps to verify that the trucker who arrived was the proper trucker to pick up the load.

///

89. Uber Freight failed to safeguard or take reasonable steps to safeguard its internal computer systems to prevent fraud, theft, and third parties from accessing same for improper purposes and then impersonating carriers.

90. Upon information and belief, one or more of Uber Freight's employees and agents were involved in the theft of the lululemon goods. Uber Freight failed to have measures or take reasonable steps to have measures in place to prevent an "inside job" from occurring.

91. Upon information and belief, Uber Freight's online system was subject to a data breach which allowed third party bad actors to access the system, resulting in the theft of the lululemon and Urban Outfitter goods.

92. Uber Freight failed to safeguard or take reasonable steps to safeguard its internal computer systems even after the lululemon and/or the Urban Outfitter goods were stolen.

93. Uber Freight's conduct constituted gross negligence in that it demonstrated a want of even scant care and an extreme departure from the ordinary standard of conduct, carried out with reckless disregard for the rights and safety of others.

94. As a direct and proximate result of Defendant Uber Freight's grossly negligent acts and omissions, Plaintiff sustained substantial damages, including but not limited to the total loss of the goods as follows:

- $338,890.81 for lost lululemon goods; and
- $377,087.23 for lost Urban Outfitter goods.

95. Defendant Uber Freight's conduct proximately caused the goods to be lost.

96. The amount of goods lost totaled $715,978.04.

97. Plaintiff's damages are a certain, foreseeable, and measurable consequence of Defendants' foregoing breaches and violations. Plaintiff was harmed by Defendants' aforementioned conduct, which was a substantial factor in causing Plaintiff harm. Plaintiff has suffered damages in a certain sum to be determined according to proof at trial, but which it estimates equals at least $715,978.04, plus prejudgment interest accrued and growing.

/ / /

/ / /

**AS AND FOR A FOURTH CAUSE OF ACTION**

**(DECLARATORY RELIEF)**

98. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 97 above as though the same were more fully set forth herein.

99. The Agreement contains Unconscionable Provisions that Plaintiff is informed and believes, and based thereon alleges, are contrary to Civil Code Section 1670.5 and unlawfully: (1) shift or purportedly attempt to shift all liability to motor carriers for property or cargo, including any loss, theft or damage thereto in violation of California public policy and notwithstanding that Defendant's failure in the first instance to properly safeguard and/or take reasonable steps to safeguard its internal computer systems, enabling its employees, agents or third parties to access same for improper purposes and then to fraudulently impersonate motor carriers or otherwise intercept property or merchandise being shipped, resulting in the loss, theft, or damage thereof; while at the same time (2) limiting or purportedly attempting to limit the liability of even the underlying motor carriers to no more than $100 per shipment regardless of the value of the property or merchandise being shipped; and then in any event (3) capping or purporting to cap whatever liability Defendant may have for direct damages to Plaintiff and others which it is unable to so shift to motor carriers—to no more than $20,000; while at the same time (4) providing or attempting to provide that Delaware law will govern disputes between the parties to avoid the unconscionability provisions set forth in the California Civil Code and the public policy of this State, notwithstanding that both Defendant resides in San Francisco, California; and all relevant events of this lawsuit occurred substantially in California.

100. These Unconscionable Provisions are contrary to California public policy, including under Civil Code Section 1670.5(a) as well as Civil Code §1668. The latter provides that "all contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

101. An actual controversy has now arisen between Plaintiff, on the one hand, and Uber Freight, on the other hand.

102. As set forth above, Plaintiff contends that the Unconscionable Provisions were unconscionable when made in violation of Civil Code Section 1670.5 and that neither the law nor the Court should allow each or any of them to be enforced. In any event, Plaintiff also contends that the Unconscionable Provisions are unenforceable as they would purportedly exculpate Defendant contrary to Civil Code Section 1668.

103. Plaintiff is informed and believes, and based thereon alleges, that Defendant contends to the contrary.

104. A judicial declaration is necessary and appropriate at this time so that Plaintiff and Defendant can ascertain their respective rights and duties under the Agreement *vis-à-vis* the validity, unconscionability and/or enforceability of the Unconscionable Provisions.

**AS AND FOR A FIFTH CAUSE OF ACTION**

**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

105. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 104 above as though the same were more fully set forth herein.

106. An implied covenant of good faith and fair dealing is implied in the Agreement between Plaintiff and Uber Freight. Plaintiff is informed and believes, and based thereon alleges, that the implied covenant of good faith and fair dealing in the Agreement bars Uber Freight from taking actions that would deprive Plaintiff of the benefits of the contract and imposes on Uber Freight the obligation to do everything the Agreement presupposes it will do to accomplish its purpose.

107. Plaintiff is further informed and believes, and based thereon alleges, that the implied covenant of good faith and fair dealing in the Agreement also imposes on Uber Freight the duty to exercise any discretionary powers it may have under the Agreement in good faith and with fair dealing.

108. Plaintiff is informed and believes, and based thereon alleges, that Uber Freight breached the implied covenant of good faith and fair dealing by failing to implement and maintain safeguards or take reasonable steps to maintain safeguards in its carrier platform to prevent fraud, theft, and impersonation of legitimate carriers; by failing to properly vet and monitor carriers,

15

vendors, and agents; and by failing to exercise reasonable diligence or take reasonable steps to exercise reasonable diligence to ensure that the appropriate, authorized, and legitimate carriers picked up and transported the lululemon and Urban Outfitters goods.

109. Plaintiff is further informed and believes, and based thereon alleges, that Uber Freight's breach of the implied covenant of good faith and fair dealing deprived Plaintiff of the central benefit of the Agreement, which was executed to ensure secure and reliable property brokerage services, but which ostensibly shifted all risk of fraud, theft, and misconduct to Plaintiff while Uber Freight retained all fees and benefits through the Unconscionable Provisions.

110. As a direct and proximate result of Defendant Uber Freight's negligent acts and omissions, Plaintiff sustained substantial damages, including but not limited to the total loss of the goods as follows:

- $338,890.81 for lost lululemon goods; and
- $377,087.23 for lost Urban Outfitter goods.

111. Defendant Uber Freight's conduct proximately caused the goods to be lost.

112. The amount of goods lost totaled $715,978.04.

113. Plaintiff's damages are a certain, foreseeable, and measurable consequence of Defendants' foregoing breaches and violations. Plaintiff was harmed by Defendant's aforementioned conduct, which was a substantial factor in causing Plaintiff harm. Plaintiff has suffered damages in a certain sum to be determined according to proof at trial, but which it estimates equals at least $715,978.04, plus prejudgment interest accrued and growing.

WHEREFORE, Plaintiff demands judgment as follows:

a. Upon the First Cause of Action, judgment against Defendant a certain sum to be determined according to proof at trial, but which it estimates equals at least $715,978.04, together with interest thereon;

b. Upon the Second Cause of Action, judgment against Defendant a certain sum to be determined according to proof at trial, but which it estimates equals at least $715,978.04, together with interest thereon;

///

  c. Upon the Third Cause of Action, judgment against Defendant a certain sum to be determined according to proof at trial, but which it estimates equals at least $715,978.04, together with interest thereon;

  d. Upon the Fourth Cause of Action, a judicial declaration that the Unconscionable Provisions were unconscionable when made in violation of Civil Code Section 1670.5 and that neither the law nor the Court should allow each or any of them to be enforced;

  e. Upon the Fifth Cause of Action, judgment against Defendant a certain sum to be determined according to proof at trial, but which it estimates equals at least $715,978.04, together with interest thereon;

  f. The costs and disbursements of this action;

  g. EFL California's reasonable attorney fees and costs; and

  h. For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: August 26, 2025      ERVIN COHEN & JESSUP LLP

By: */s/ Robert M. Waxman*
   Robert M. Waxman, Esq.
   Attorney for Plaintiff EFL Global LLC

17